## Gray v. Commonwealth.

(Decided Feb. 7, 1933.)

TANNER OTTLEY, P. J. ANDERSON and L. A. WEBB for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Under an indictment charging him with the murder of Stanford Watson, Wolford Gray has been found guilty of voluntary manslaughter, and his punishment fixed at imprisonment for 10 years. He has appealed.

His counsel argue a number of grounds for reversal, but the conclusion reached renders it unnecessary to give attention to but two of the grounds assigned; however, a proper consideration of these grounds calls for a brief summary of the evidence.

The homicide occurred on a highway near the state line between Kentucky and Tennessee. Appellant, Osby Scott, Robert Scott, Paul Scott, Ned Davis, and Paul Colston met, and had been together for some hours prior to the difficulty which resulted in the death of Stanford Watson, and there is evidence that they had partaken somewhat freely of moonshine liquor. Deceased, who lived in Kentucky, attended church in Tennessee, and on returning home passed the point where the others had assembled near the state line. The record is silent as to any difficulty or unpleasantness between him and any of the other parties at that time.

The mother of deceased and other witnesses for the commonwealth testified that he was turning in to his home when appellant applied to him an epithet too vile to admit of repetition, and said that he would hickory whip him if he came back. Thereupon deceased turned his mule and rode back to where the others were, but, when he arrived, appellant and some of his associates were engaged in a fight in which the participants received minor cuts and bruises. The evidence for the commonwealth clearly indicates that appellant either threw a rock with the intention of striking deceased or that the rock which struck him was thrown by appellant with the intention to strike some of the others. Deceased's neck was broken by the blow, he fell from his mule, and died before he could be removed to the roadside. Appellant immediately fled. The evidence for the commonwealth tends to show that appellant was the aggressor and had made an unprovoked attack upon the boys with whom he was fighting when deceased arrived at the scene. There is no evidence that deceased took any part in the affray or that he made any threats or demonstrations toward appellant or any of the other parties present, but sat on his mule watching the difficulty without speaking a word.

Appellant testified that he and his companions went to the home of William Watson, and, while there, Ned Davis and Bob Daniels got into a quarrel, and Mrs. Watson was holding Davis and trying to get him to go away. She got the Daniels boys into the house and asked appellant to take the others away; that, when they left the Watson home, one of the Scott boys rode on the horse with him; when they arrived at the scene of the difficulty, something struck him in the back of the head, rendering him unconscious, and he knew nothing

more of what transpired until he started for his home; however, he did state that Ned Davis and the Scott boys were kicking and striking him. He was shown a rock found in the road where the homicide occurred and asked if he threw that and struck deceased, to which he replied that he did not, or, if he did, he was not conscious of what he was doing. He further testified that, due to a crippled right shoulder sustained in a fall, he could not throw, in fact could not raise his arm above his head, and often was unable to get his hand to his hip pocket. He testified that he did not run from the scene, and could not run because of a stiffened leg, also due to injuries sustained in an accident. He stated that, after the affray, he had two or three wounds on his head which bled profusely, a knife cut on his neck, and bruises on his chest and shoulders. He also stated that Herman Gray came up about the time the difficulty started.

Herman Gray did not state what time he arrived upon the scene, but testified that, after he arrived, he saw Ned Davis and three of the other boys have appellant down beating him on the head and shoulders with their fists and with chunks; that, when they quit beating him, he left; that a short time before appellant left deceased came up; that he followed appellant, and, when he left, deceased was still on his mule. He further testified that Ned Davis cursed deceased when he saw him coming. Other witnesses stated that appellant was bloody and had wounds on his head and cuts and bruises on his neck and shoulders.

One of the grounds for new trial is that Grundy Hopper, one of the jurors who sat in the case, is a first cousin to the father of deceased; that this relationship was known to the juror at the time he qualified and served, but was unknown to defendant or his counsel. This ground is supported by affidavits showing the relationship of the juror to the father of deceased. The charge that this juror was related to deceased was not controverted by affidavit or otherwise, nor did the commonwealth in any way undertake to show that he was not related to deceased, or, if related, that he was ignorant of that fact at the time he qualified or during his service as such juror.

When a juror qualifies for service in a murder case without disclosing that he is related to the deceased, he

is guilty of such misconduct as will authorize the granting of a new trial when that fact is properly presented in motion and grounds for new trial, and especially so when there is no showing on the part of the commonwealth that the juror was ignorant of such relationship at the time he qualified and during his service as a juror. It was so held in the case of Miller v. Commonwealth, 203 Ky. 437, 262 S. W. 579, where it appeared by motion and grounds and supporting affidavits that two of the jurors were third cousins of deceased. As pointed out in that case, one charged with a serious crime is entitled to be tried by an unbiased jury, and the rule laid down therein has long been recognized and followed by this court. In the circumstances, we are constrained to hold that the court erred in not granting appellant a new trial.

The other ground argued for reversal to which it is necessary to give attention is the alleged error in instructions. The bill of exceptions is so poorly prepared or so carelessly copied that it is difficult, if not impossible, to determine what instructions the court did give. So far as we are able to determine from the record, it appears that instructions 1, 2, 3, 4, and 5, given by the court, are substantially correct. However, if at the time deceased was killed appellant was being assaulted by Ned Davis or others, and he believed, or had reasonable grounds to believe, that he was in danger of death or some great bodily harm at the hands of his assailants, and that it was necessary, or believed by him in the exercise of a reasonable judgment to be necessary, to throw the rock at his assailants in order to avert the dangers, real or to him apparent, and in so doing he missed him or them and accidentally and unintentionally struck and killed deceased, he is excusable on the ground of self-defense and apparent necessity. But he cannot escape if he sought and brought on the difficulty in which he was engaged at the time. There is some evidence conducing to show that Davis or some of the others did assault appellant; therefore the court should have given a self-defense instruction. Such an instruction with proper modifications was approved in the case of Turner v. Com. (Ky.) 89 S. W. 482, 28 Ky. Law Rep. 487, and will be a guide to the court in preparing this instruction on another trial. It is further insisted by counsel for appellant that, in view of his evidence that he received a lick of sufficient force to render him un-

conscious before the homicide, and, because of this condition, knew nothing of what transpired thereafter until he left the scene, and the corroborating evidence that he had received severe wounds upon his head, the court should have instructed the jury, in substance, that, although they believed from the evidence that appellant threw the rock which struck and killed deceased, yet if, at the time he did so, he was unconscious of his act, they should find him not guilty.

In the case of Morgan v. Commonwealth, 242 Ky. 116, 45 S. W. (2d) 850, 851, this court said:

"Ordinarily, and in the general run of cases, the rights of a defendant in a criminal prosecution are completely protected by the giving of general instructions under a plea of not guilty, and that is universally so where defendant denies the facts constituting the offense with which he is charged. But where he admits such facts, and then interposes a legal excuse therefor having legal effect to exonerate him from criminal intent, his excuse should be submitted to the jury in concrete form."

We would not be inclined to reverse the judgment on this ground alone, since under the instructions which it appears were given, the jury was not authorized to find appellant guilty, unless they believed he acted willfully in throwing the rock that struck and killed deceased, and they could not have found he so acted if they believed his condition of mind at the time was such as to render him unconscious of what he was doing. However, as there must be a reversal for other reasons, the court should on another trial, if the evidence on this question is practically the same, give an instruction in effect that, although the jury may believe from the evidence that appellant threw the rock that struck and killed Stanford Watson, yet if they further believe from the evidence that, at the time he did so, he was, as the result of a blow on his head, unconscious of his act, or that his mind was thereby so impaired and unsound that he did not have sufficient reason to know what he was doing, or to know right from wrong, they should find him not guilty.

For the reasons indicated, the judgment is reversed, and cause remanded for a new trial in conformity with this opinion.