## Gray v. Commonwealth.

(Decided April 24, 1934.) .

TANNER OTTLEY, for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

For a second time Wolford Gray is appealing from a judgment of conviction for manslaughter under an indictment charging him with the murder of Stanford Watson. On the former appeal the judgment was reversed because of the misconduct of a juror and error in instructions. The evidence introduced on the last trial, in all material respects, is the same as that given in the first trial. The essential facts are set forth at length in the former opinion, which will be found in 247 Ky. 282, 57 S. W. (2d) 6, and reference thereto saves the necessity of any further statement. Since a reading of the facts as set forth in the former opinion will disclose that the verdict is amply supported by the evidence and the instructions given on the last trial fairly submitted to the jury the issues made by proof, we are only left to consider one and the principal ground relied on for reversal.

The hearing of evidence was completed about 4 o'clock in the afternoon, and the case was submitted to and considered by the jury until about 5:30, when, having failed to reach a verdict, they were permitted to go, in charge of an officer, until the following morning. After considering the case for something over two hours on the following morning, they came into open court and reported that they had reached a verdict. The verdict finding defendant guilty and fixing his punishment at imprisonment for five years was read and the jury polled on the motion of defendant's attorneys. Two or three bystanders who had served on the jury were instructed by the court with reference to securing pay for their services and were orally discharged, whereupon they left the courtroom while the regular jurors were finding seats. The trial judge's attention was then called to the fact that the accused was not present when the verdict was read. He immediately had the jury reassembled, and, when appellant had been brought into the court, the verdict was again read and the jury at the court's direction was polled. Appellant's counsel objected and excepted to the reassembling of the jury and to the reading of the verdict again.

It is argued for reversal that appellant was not present when the verdict was read and the jury polled, and that these steps taken in his absence constituted prejudicial and reversible error. Supporting this contention, section 11 of the Bill of Rights, section 183 of the Criminal Code of Practice, Temple v. Commonwealth, 14 Bush, 769, 29 Am. Rep. 442, Riddle v. Commonwealth, 216 Ky. 220, 287 S. W. 704, and Kokas v. Commonwealth, 194 Ky. 44, 237 S. W. 1090, are cited. The pertinent part of section 183 of the Criminal Code of Practice reads:

"If the indictment be for a felony, the defendant must be present, and shall remain in actual custody during the trial. * * *"

Section 11 of the Bill of Rights, among other things, provides:

"In all criminal prosecutions the accused has the right to be heard by himself and counsel; * * * to meet the witnesses face to face. * * *"

In the Temple Case appellant was on trial for murder, and the verdict was returned in the absence of

either the accused or his counsel. The court, in holding that to be reversible error, after asserting that the right to be heard by himself and counsel embraced the right of the accused to be present himself and also to have his counsel present at every step in the progress of the trial, in the course of the opinion said:

"And at no time in the whole course of the trial is this right more valuable than at the final step when the jury are to pronounce that decision which is to restore him to the liberty of a citizen, or to consign him to the scaffold or to a felon's cell in the state prison. He has a right not only to see and know that the whole jury is present assenting to the verdict, but by polling to demand face to face of each juror whether the verdict is his verdict, and to object to it unless each member of the jury shall answer for himself that the verdict is his.

"The right to poll the jury in criminal causes has in this state always been deemed an essential part of the right of trial by jury. It is guaranteed by both the constitution and the statute, and ought to be maintained and preserved by the courts as essential to the protection of the rights of the citizen."

In the Riddle Case, accused was in jail when the verdict was read and the jury polled. It was held that, under the quoted provisions of the Bill of Rights and section 183 of the Criminal Code of Practice, accused has the right to be present at every step of the trial and especially to be present himself and to know that each member of the jury was assenting to the verdict by requiring them when face to face with him to state that the verdict was their verdict.

In the Kokas Case the official stenographer was permitted to go into the jury room, and, in the absence of the accused, read from his notes statements made by various witnesses and this was held to be error.

In the case of Boreing v. Beard, 226 Ky. 47, 10 S. W. (2d) 447, it was held that under quoted provisions of the Bill of Rights and the Criminal Code of Practice it was error to receive a verdict or to take any other material steps in the trial of one charged with a felony during his involuntary absence; however, it was further held that such right may be waived and that a judgment

based on such a verdict is not void but merely voidable. It is pointed out in the opinion that courts in numerous jurisdictions take the contrary view and hold that a judgment based on a verdict read in the absence of the accused is void.

Unquestionably, under the Constitution and Code as construed by this court, it was reversible error to receive the verdict and poll the jury in the absence of appellant, but this case is unlike any of the cases cited, in that in this instance the jury was reassembled after the absence of accused was called to the attention of the court, and the verdict was read and the jury polled in his presence. Therefore it remains to be determined whether the error in reading the verdict in the absence of the accused was cured by the subsequent proceeding.

Under section 340 of the Criminal Code of Practice, the court is not authorized to reverse a judgment for errors appearing in the record when upon a consideration of the entire case it appears that the substantial rights of accused have not been prejudiced by such error. It is merely made to appear in the record by appellant that the verdict was read and the jury polled in his absence, but, by order overruling motion and grounds for new trial which is made a part of the bill of exceptions, the trial judge has set out at length all that occurred with respect to the verdict of the jury. According to this statement, the jury was immediately reassembled, and only five or six minutes elapsed between the first and second reading of the verdict. When the jury was reassembled, the same verdict was read in the presence of the accused, and he was afforded the opportunity guaranteed him by the Constitution and laws requiring each juror when polled and when face to face with him to state that the verdict returned was his verdict.

An entirely different question would be presented if, when the jury was reassembled, they had again taken the case under consideration and returned a verdict inflicting a greater punishment, but the fact that the same verdict was again read, and, when polled in the presence of appellant, each juror stated that the verdict was his verdict, affirmatively discloses that nothing occurred in the interim to prejudice the rights of the accused.

In the case of Taggart v. Commonwealth, 104 Ky. 301, 46 S. W. 674, 675, 20 Ky. Law Rep. 493, the jury re-

turned a verdict fixing the defendant's punishment at "confinement for 7 years in the punishment." After the jury had been discharged, they were recalled and the word "penitentiary" was substituted for the last word in the verdict, and the verdict was then re-read and the jury polled. After the jury was discharged, and before they were recalled, all of them remained in the courtroom except one who went to the toilet adjacent to the courtroom. It was held that the lower court did not commit reversible error in recalling the jury to have the verdict corrected.

In the case of Denham v. Commonwealth, 119 Ky. 508, 84 S. W. 538, 539, 27 Ky. Law Rep. 171, the jury, after reading the verdict, were recalled by the court to return to their room to correct defective wording in the verdict. It was contended by counsel for the accused that the judge had discharged the jury after the verdict was first read, but it was pointed out in the opinion that the record disclosed otherwise; however, in the course of the opinion it was said:

"But, if the jury had been discharged as charged by counsel for appellant, even then as they had not left the presence of the court before being recalled and directed to retire to their room for the purpose of returning the second verdict, no injury could have resulted to appellant's rights."

In the case of Blair v. Commonwealth, 181 Ky. 218, 204 S. W. 67, the jury returned a verdict finding the accused guilty of housebreaking. The verdict was received by the court, publicly read, the jury discharged, and the defendant remanded to jail. Immediately thereafter the jury which sat in the Blair Case was impaneled, sworn, and actually engaged in the trial of another case when the clerk called the court's attention to the fact that the verdict had not been signed by any of the jurors. When this discovery was made, neither Blair nor his attorney were present in the court. The circuit judge permitted one of the members of the jury who had returned the verdict to sign same, and immediately ordered Blair to be brought before the court, and, when this was done, the juror who signed the verdict, when asked if he had signed it, replied that he had, and the jury was polled and asked if it was their verdict, and each answered affirmatively, whereupon the jury was finally discharged. To all of this the accused ob-

jected and expected, but it was held that it was not reversible error.

The pivotal point in this case, as in all the cases cited, is whether or not the substantial rights of the accused have been prejudiced by the error complained of. Considering the circumstances as revealed by the record in the light of the authorities cited, we are led unerringly to the conclusion that appellant was not prejudiced by the error complained of.

Judgment affirmed.