## Newsome v. Commonwealth.

Oct. 3, 1941.

Joe P. Tackett for appellant.

Hubert Meredith, Attorney General, and H. Appleton Federa, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

Cecil Newsome and Lawson Brown were jointly indicted by the grand jury of the Floyd Circuit Court for the murder of Lawrence Collins. Upon a separate trial Newsome was convicted of manslaughter and his punishment fixed at confinement in the penitentiary for 21 years. While his motion and grounds for a new trial, with the amendment thereto, assigned twelve errors, all

but two were abandoned in his brief and he is now seeking to reverse the judgment because of improper conduct of counsel employed to assist the prosecution, and because the court failed to instruct on temporary insanity.

The record shows these facts. On Sunday night, Oct. 20, 1940, Newsome, Brown and Dodge Turner, accompanied by their wives, upon returning from an automobile ride about 9:30 o'clock, stopped at Rader's restaurant in Drift, Kentucky, for sandwiches. Tip Daniels was in the restaurant under the influence of liquor and defendant's wife said something about him attempting to flirt with her. Newsome testified he remonstrated with Daniels who became abusive and a fist fight resulted in which Daniels was knocked down a time or two. Thereafter Newsome and Daniels shook hands and both agreed to forget their difficulty. From the record it appears defendant was not acquainted with Daniels or the latter's brother-in-law, Lawrence Collins.

Within a few minutes after the fist fight Collins was seen in conversation with Daniels. Billie Johnson, a witness for the Commonwealth, testified that in this conversation Collins said to Daniels in reference to Newsome, "You get him on the outside and I'll cut his head off." Daniels then approached Newsome, who with his wife and companions were waiting for their sandwiches, saying he was not satisfied with the fight and would like to resume it outside. Thereupon, Newsome said that suited him, and he and Daniels pulled off their coats and started outside, preceded by Collins.

Upon arriving outside of the restaurant Daniels backed away from Newsome saying, "Wait a minute," while rolling up his sleeves. Collins sprang out of the dark, jumped upon Newsome from the rear with something shiny in his hand and threw his arm around Newsome's neck. Newsome, with blood coming from his throat, slung Collins off his back, drew his knife and they fought down the road some fifty yards where they went over an embankment in a clinch. There is some conflict in the testimony as to what happened from the place the fight started in front of the restaurant until the two men went over the embankment. Some of the witnesses testified Collins ran down the road after being slung off Newsome's back with Newsome pursuing and catching him just as they reached the embankment; that

Newsome struck Collins in the back at the edge of the embankment, Collins sank down and both went over the embankment. Other witnesses testified the two men fought down the road, first one and then the other in front, and they went over the embankment in a clinch.

After they were separated both men were taken to a hospital where Collins died the following morning. The undertaker who prepared his body for burial testified there were five stab wounds in his back, two in his left chest, besides several minor wounds. The doctor who treated Newsome testified he had three severe cuts on his neck, of six, five and two inches in length, and some minor cuts; that his jugular vein was severed; and prompt first aid treatment prevented him from bleeding to death within a few minutes.

Billie Johnson, a Commonwealth witness, was the only person testifying as to what Collins said to Daniels in the resturant as to decoying Newsome outside so Collins could cut him. Johnson's answer was not directly responsive to the question but no objections were registered by the Commonwealth or the defendant. Several witnesses testified that Collins and Daniels engaged in conversation directly after the fist fight but nobody but Johnson testified that Collins told Daniels to get the defendant on the outside and he would cut his head off. Although Daniels testified, neither the Commonwealth nor the defendant interrogated him as to his conversation with Collins. Daniels did testify that he was in the restaurant when Newsome came in and accused him of flirting with his wife and knocked him down; that Collins came in and asked Daniels what happened and he replied, "We had been fighting a little." Neither side asked Daniels whether or not he had the conversation with Collins as detailed by Billie Johnson.

The bill of exceptions shows that in his argument to the jury the counsel employed to assist the Commonwealth said:

"We brought into this court every eyewitness we could find. This poor bunch of human flesh, Billie Johnson. I am not going to go into that testimony. You saw him and heard him and you saw his demeanor on the witness stand, and you heard his story of talking here, there and everywhere, signing statements. I will say that I felt at that time and I

feel now that every member of this jury, as far as Billie Johnson is concerned, took a blotter and blotted that out and his testimony is out of your mind. That is the only man in this case, the only witness in this case ever said Lawrence Collins said one word about this man who took him out of that building. *We could not put Tip Daniels on in regard to his statement because the rule of law doesn't permit it and the court would have had to sustain the objection."* (Our italics.)

Defendant's objection to this argument was overruled as was his motion to discharge the jury. The statement ''We could not put Tip Daniels on in regard to his statement because the rule of law doesn't permit it and the court would have had to sustain the objection,'' is clearly an erroneous statement as to the law of evidence, as is practically admitted in the brief of the learned Assistant Attorney General. Section 596 of the Civil Code of Practice, which is applicable to criminal cases, authorizes the party producing a witness to contradict him by other evidence where his statement is prejudicial to the party producing him. Johnson v. Com., 227 Ky. 153, 12 S. W. (2d) 308; Bynum v. Com., 248 Ky. 564, 59 S. W. (2d) 550.

It is insisted in the brief of the Attorney General that although such argument might have been improper it was not prejudicial to defendant's substantial rights. We are not prepared to say that in the ordinary run of criminal cases such argument would be prejudicial, but in the circumstances presented by this record we think it is. If Johnson's testimony is to be believed, then Collins and Daniels entered into a conspiracy to get defendant out of the restaurant so Collins could kill him, and of necessity would have had great weight with the jury. The purpose of the argument was to destroy the effect of Johnson's testimony but it misstated a rule of evidence that the Commonwealth could not contradict Johnson. While the Commonwealth, over defendant's objection, could not have had Tip Daniels detail the conversation between Collins and himself, which occurred without the hearing of the defendant, yet under Section 596 of the Civil Code of Practice, and the authoritie\, just mentioned, it could have, for the purpose of contradicting its witness Johnson, inquired of Daniels if such conversation occurred. When the attorney assisting in

the prosecution argued that the Commonwealth could not contradict this testimony of Johnson and the court overruled defendant's objections thereto, the jury were most likely to have concluded that although Johnson's testimony might be false, the Commonwealth was powerless to contradict him.

This record presents a close case relative to whether or not defendant acted in self-defense against an alleged premeditated attack by Collins, or whether or not Collins' attack on defendant was in defense of his brother-in-law, and was without injury to defendant, and thereafter the defendant became the aggressor. This improper argument might well be calculated to tip the scales of justice against defendant, therefore we hold it prejudicial to him and the judgment must be reversed on account of it. The other alleged misconduct by counsel of slapping a juror on the knee, for which he immediately apologized, and for misquoting the testimony of Mrs. Brown, will in all probability not recur on another trial, hence we refrain from discussing it.

It is next urged by defendant that in view of his testimony that he remembered nothing after Collins jumped on his back and cut his throat, and became unconscious before the homicide and did not regain consciousness until the next morning, which was corroborated by evidence that he received severe wounds in his throat at the start of the difficulty, the court should have instructed the jury to the effect that although they believed from the evidence defendant killed deceased, yet if at the time he did so, he was unconscious of his act, they should acquit him.

We here use almost the identical language written in Gray v. Com., 247 Ky. 282, 57 S. W. (2d) 6, that we would not be inclined to reverse the judgment on this ground alone because under the instructions given, the jury were not authorized to convict unless they believed defendant acted willfully in cutting Collins, and they could not convict him had they believed his mental condition at the time was such as to render him unconscious of his act. But the judgment must be reversed on account of improper argument, and on another trial should the evidence in question be practically the same, the court will give an instruction to the effect that although the jury may believe from the evidence defendant cut, stabbed and killed Collins, yet if they further believe

from the evidence that at the time he did so he was unconscious of his act, as a result of a wound in his throat, or that his mind was thereby so impaired and unsound that he did not have sufficient reason to know what he was doing, or to know right from wrong, then they should acquit him.

For the reason indicated the judgment is reversed for proceedings consistent with this opinion.