## Noe v. Commonwealth.

March 27, 1942.

Jay H. Taylor for appellant.

Hubert Meredith, Attorney General, and Wm. F. Neill, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On February 23, 1941, the appellant, Jerry Noe, and Ely Rhodes, his partner, operated a roadhouse on Greasy Creek in Bell County near the line of Whitley County. Between 3:30 and 4 P. M. on the afternoon of that day there were some fifteen or twenty customers therein who were engaged in the entertainments furnished by such places, which in this instance consisted largely in the consumption of beer. Among those present was a young man by the name of Flem D. West, and another by the name of Carter. Following their arrival Carl Teague and the deceased, Charles Lee Smith, arrived, and the latter ordered a sandwich which he was fixing to consume at the counter where such lunches were served, when he was shot and instantly killed. The pistol from which the shot was fired was then in the hands of the appellant and being employed by him in an affray with West.

That affray came about in this way: West, just before, or about the time Teague and the deceased arrived at the place, became engaged in a more or less quarrel and controversy with Carter about a matter not disclosed by the record. Rhodes, the partner of appellant, ejected him from the room and he remained on the outside for sometime—most of the witnesses placing it at about 10 minutes—when appellant saw him approaching the entrance door to the building with the apparent intent of reentering it. Up to this point there is comparatively no dispute in the testimony, but appellant says that when West on his return trip landed in the door to the premises he said: " ' Either one of you S——s of B——s try to put me out again' and used an oath." He did not state in his testimony as to any threat, if any, that West may have then made. But, another witness in the case by the name of Lake, and who was a bystander, testified that after West got into the door on his return trip he said: "No God Damn S—— of a B—— could

put him out of there," and that then appellant drew his pistol from his pocket and approached West and commenced striking him on the side of the head with it, and during the melee the pistol was discharged, the bullet striking the deceased Smith, who, as we have said, was instantly killed, and an innocent by-stander. Appellant stated that when he approached West—when the latter attempted to re-enter the building the second time—and after he had been ejected by appellant's partner, he (West) ran his hands in his trousers pockets as if to draw a weapon and that he then assaulted him with his pistol, as a cudgel and not as a firearm, in his necessary self-defense, from his then reasonably apparent danger of being killed or sustaining great bodily harm at the hands of West. In addition to that defense he also urged accidental and unintentional shooting of Smith.

The court gave the usual instructions, including one on accidental shooting; but no instruction on self-defense, based upon appellant's testimony—and perhaps that of one other witness—was given. Appellant was convicted of voluntary manslaughter and punished by confinement in the penitentiary for two years. His motion for a new trial was overruled and from the verdict and judgment rendered thereon he prosecutes this appeal, urging through his counsel only two grounds for reversal, which are: (1) The verdict was not sustained by sufficient evidence and the court erred in not sustaining appellant's motion for a peremptory instruction of acquittal; and (2) error of the court in not giving the self-defense instruction. They will be disposed of in the order named.

1. But little space need be taken in disposing of ground (1). A considerable majority of the witnesses who testified in the case stated that West after getting in the door upon his effort to reenter the building made no insulting remark nor employed any threats or oaths. Neither did any of the witnesses see any weapon about him, except one witness testified that he thought he saw a closed knife in his hand. In other words, the majority of the witnesses testified that his conduct on reentering the building was quiet and peaceable and remained so until appellant undertook to again eject him from the building, and which brought on the difficulty between the two during which appellant's pistol was fired. Appellant himself stated that in shoving West back he no-

ticed that he was intoxicated "And I went to stop him with my pistol around his head and my pistol went off." He had previously stated that as he approached West "He (West) ran his hands in his over-all pocket." He further stated that he saw no weapon about West and that he did not know how his pistol came to be discharged, but that it was unintentional on his part and was accidentally caused to fire while he was scuffling with West, which he claims was necessary to ward off the threatened danger at the hands of West with which he was confronted.

Clearly, under the testimony as so briefly outlined, the court properly overruled appellant's motion for an acquittal, since his assault on West in the circumstances described by a majority of the witnesses was unjustifiable and unless so, the homicide with which appellant is accused was likewise unjustifiable. This ground, therefore, is overruled.

2. In the circumstances of this case—i. e., where an innocent bystander is killed—the perpetrator of the homicide is entitled to the same defenses afforded him by the law as would be in case he had killed his antagonist, and if the killing was done under circumstances that would excuse the killing of the antagonist, it will also excuse the unintended killing of the bystander. See Shelton v. Commonwealth, 145 Ky. 543, 140 S. W. 670; Logan v. Commonwealth, 187 Ky. 793, 220 S. W. 742; Gray v. Commonwealth, 247 Ky. 282, 57 S. W. (2d) 6; Minix v. Commonwealth, 266 Ky. 801, 100 S. W. (2d) 825; and cases cited in those opinions. Therefore, appellant was entitled in this case to the same instructions that he would have been entitled to had he killed West instead of the deceased, Smith.

Appellant testified to facts which, if true, gave him the right to act in his self-defense in warding off the reasonably apprehended danger to which he testified at the hands of West; provided, however, that he did not unlawfully bring on the difficulty between him and West, and assaulted the latter unjustifiably, and thereby brought on or invited the danger which he testified he apprehended at the hands of West. A number of witnesses, as we have seen, testified that West was doing nothing, nor abusing or threatening anyone, when he was approached by appellant with a drawn pistol and with which he immediately assaulted West. If the jury

should find that the affray in which appellant became engaged was thus produced, he may not rely on his right of self-defense as against any efforts on the part of West in defending such assault. Therefore, the self-defense instruction should be qualified in the manner indicated when given on another trial.

Wherefore for the reasons stated the judgment is reversed with direction to set it aside and to sustain the motion for a new trial, and for other proceedings consistent with this opinion.