## Barker v. Commonwealth.

(Decided June 19, 1925.)

### Appeal from Whitley Circuit Court.

1. Witnesses—Refusal of Defendant's Rebuttal Evidence to Show Good Character Held Erroneous.—In murder prosecution where, after defendant had testified as witness, Commonwealth introduced evidence showing his moral character to be bad, it was error to refuse defendant's offer in rebuttal to show that his reputation for truth and veracity was good.

2. Criminal Law—Homicide—Evidence of Defendant's Conduct in Cursing Policeman After Alleged Shooting Held Not Res Gestae, Nor Competent to Show Motive.—In murder prosecution, it was error to admit evidence as to reprehensible conduct by defendant at his father's home in cursing and humiliating a special policeman some 20 or 30 minutes after the shooting, it not being a part of res gestae, nor competent to show defendant's state of mind or motive for commission of crime.

3. Criminal Law—Instruction That Deceased and Others Were Special Policemen of City Held Without Error.—Where in murder prosecution defendant was charged with shooting a special policeman, in view of evidence that appointments of deceased and other special policemen under charter of city, authorized by Kentucky Statutes, sections 3297, 3298, had been renewed from time to time, there was no error in charging as a matter of law that named parties were special policemen.

4. Homicide—Instruction that it was Defendant's Duty to Give to Special Policemen Any Information They Had in Relation to Shooting Held Erroneous.—In murder prosecution, where preceding killing special policeman had gone to defendant and demanded explanation as to shooting heard by policemen, it was error to instruct that it was duty of defendant and his brother to peacefully give officers any information they had in relation thereto, such instruction clothing policemen with powers of grand jury or court of inquiry.

5. Criminal Law—Instruction on Self-defense, Based Wholly on Idea That Defendant Killed Victim, Held Erroneous.—Instruction on self-defense, based wholly on idea that defendant shot and killed victim, was erroneous where there was evidence that defendant's brother shot and killed him, it not giving defendant benefit of right of self-defense or defense of his brother.

R. L. POPE, H. C. GILLIS, WM. LEWIS and J. B. WALL for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant was charged in an indictment with the murder of George Yaden by shooting and wounding him from which he died. In the same indictment it was charged that appellant's brother, J. C. Barker, shot and killed Yaden, and that appellant at the time was then and there present and aided, abetted, counseled and encouraged J. C. Barker in said shooting and killing.

On appellant's trial he was found guilty of manslaughter and sentenced to imprisonment for 21 years, from which judgment this appeal is prosecuted.

In as much as there must be another trial, we will not go into any extended or detailed discussion of the evidence, but it will be necessary to state in a general way its substance so that the grounds of reversal urged may be properly understood.

Corbin, where the shooting occurred, is essentially a railroad town, it being the end of several divisions of the L. & N. Railroad Company's lines. The population of the city is, therefore, composed largely of railroad employes of different classes, and in January, 1923, certain classes of these railroad employes—that is those engaged in certain kinds of railroad employment—were on a strike, and there resulted considerable disorder within the city. Appellant and his brother were railroad employes, but were not engaged in that particular employment, the members of which were at the time striking.

On the 28th of January, while the strike was in progress, J. C. Barker went on some mission for his father to London, Ky., a few miles away, and consequently was not engaged in his railroad work on that day; but appellant was engaged as usual in his railroad work, and his hours were from 2:00 p. m. to 11:00 p. m. J. C. Barker having returned from London, that night went up to the town from his home and awaited for his brother to stop work, and thereafter they seem to have together remained in the central part of the town until between one and two o'clock a. m., when they started home. One of them lived with his father, and the other not far away at his own home.

The mayor of the city acting under authority of the city charter had shortly before that appointed several special policemen, and two of these policemen, Day and Yaden, were on duty when someone, a short distance from them, fired off a pistol on the street, and it is apparent that they thought it was one of the Barkers, who were going toward home at that time. Before following up the person who had fired the pistol, Day and Yaden went to a nearby restaurant where they found another special policeman, Richmond, and the three started out to ascertain who had fired the shot, and presumably to arrest such person.

At a corner near the home of the two Barkers the three special policemen came upon them, and inquired of them who had fired that shot a short time before, whereupon J. C. Barker responded by asking "who in the hell wants to know?" Day then said they were special policemen and it was their duty to find out about the shooting, whereupon J. C. Barker asked him who had appointed them and whether they had been residents of Corbin for six months. When the Barkers were informed that the

mayor had appointed them and they had not been residents of Corbin for six months, he then said to the special policemen "they did not care a damn who they were or where they were from," at about which time the shooting began. The two special policemen who survived state that J. C. Barker fired the first shot, and appellant states that one of the policemen fired first.

Quite a number of shots were fired on each side, and when the shooting was over Yaden, a special policeman, was killed, J. C. Barker was mortally wounded from which he died in an hour or so, and appellant was wounded.

From the evidence it cannot be distinctly said whether J. C. Barker or appellant fired the shot or shots which killed Yaden.

The grounds for reversal are the admission and rejection of evidence, and the giving of erroneous instructions.

On the trial and in rebuttal, after defendant had testified, the Commonwealth was permitted to introduce evidence showing the moral character of defendant to be bad; and thereafter defendant placed the sheriff of the county on the stand, and offered to show by him that his reputation for truth and veracity was good, and the court refused to permit the introduction of such evidence. Clearly this was error, for there could have been no purpose by the Commonwealth in attacking the moral character of defendant who had offered himself as a witness, except to affect his credibility as such witness; and when the Commonwealth had thus brought in question his credibility he should have been permitted to show his general reputation for truth and veracity to be good.

Likewise the court erred in admitting evidence as to some very reprehensible conduct by appellant at his father's home in cursing and humiliating another special policeman, some twenty or thirty minutes after the shooting. It is difficult to understand how this subsequent occurrence between defendant and one who had not been a participant in the shooting could shed any light upon the merits of the previous controversy. Manifestly it was not a part of the *res gestae,* and was not even competent to show the state of mind of the defendant, or show any motive upon his part for the commission of the crime. Then the difficulty was past

and his brother was dying of his wounds, and he himself was suffering from his own; and while it might have disclosed his animosity in general against the special policemen, it did not in fact show any pertinent fact about the previous shooting.

One of the court's instructions told the jury as a matter of law that Yaden, Day and Richmond were special policemen of the city of Corbin, and complaint is made of this. Corbin was then a city of the third class, and the charter for such cities (section 3297) provides that the mayor shall by and with the advice and consent of the common council appoint policemen, and section 3298 requires that policemen shall be commissioned by the mayor in writing, and that they shall be peace officers of the city and the Commonwealth. In addition to conferring power to appoint regular policemen conferred by section 3297, it is provided in that same section:

> "He shall, in case of emergency, have the power to appoint special policemen in addition to the regular force, but not for a longer period at one time than three days unless specially authorized by the council."

The evidence shows without contradiction that each of the three special policemen in question had been appointed by the mayor, and that their appointment had been renewed from time to time under the provisions of the charter. It is argued that because the council had passed an ordinance providing that no person should be eligible as a policeman who had not at the time of his appointment been a resident of the city for six months, and that the evidence shows each of these parties was then and had been a resident of another county, the appointments were void, and they were in fact not officers. But it is perfectly apparent that the policemen referred to in the ordinance are the regular policemen authorized to be appointed by the mayor in the charter. Such regular policemen could be appointed only by and with the consent of the council, and were required by the charter to have written commissions signed by the mayor; while the provision for the appointment of special policemen only provides for their appointment by the mayor in case of an emergency, and for a limited period of three days for special purposes.

It will not, therefore, be deemed to have been within the purpose of the general council to embrace special policemen when it provided a qualification of six months' residence in the city for the appointment of policemen; manifestly that provision was intended only for regular policemen. It results, therefore, that wholly apart from the question whether they might have been in any event *de facto* officers, their appointment being regular and there being no requirement that they should be residents of the city at all, they were in fact officers as the court instructed.

But there is appended to that same instruction a direction to the jury that if they believed from the evidence beyond a reasonable doubt that the two Barkers either knew or were then informed by the special policemen, or any of them, that they were such,

"Then it was the duty of the defendant Barker and his brother to peacefully give the said officers any information they or either of them had in relation thereto."

While it was certainly the duty of the officers to investigate and inquire about any infraction of the law, we are aware of no duty imposed upon a citizen to give to an officer upon inquiry any information which he may have as to such infraction. While it may be conceded that the requirements of good citizenship would demand that of him, the law imposes no such duty, and the facts of this case furnish excellent illustration of the reason. The instruction in effect clothes the policemen with the powers of a grand jury or court of inquiry.

This record discloses that the Barkers, one or the other of them, were under suspicion of having themselves been guilty of the shooting which the officers were investigating, and to impose upon them the duty to disclose upon inquiry who had been guilty of that offense would have imposed upon them the duty to give or furnish evidence against themselves. Manifestly this part of that instruction was erroneous.

Likewise the complaint of the self-defense instruction is well founded. That instruction is based wholly upon the idea that appellant shot and killed Yaden, while there is evidence from which the jury might well have believed that J. C. Barker shot and killed him; and it does not give appellant the benefit of the right of self-defense or the defense of his brother, if the latter shot

and killed Yaden. A similar error resulted in the reversal of the judgment in the case of Bowling v. Commonwealth, 196 Ky. 182, upon facts somewhat similar to those in this case.

We perceive no other prejudicial error, but because of the errors mentioned, the judgment is reversed with directions to grant appellant a new trial, and for further proceedings consistent herewith.