## Pierce v. Commonwealth.

(Decided June 15, 1926.)

### Appeal from Russell Circuit Court.

1. Criminal Law.—Proof of juror's prejudicial misconduct, of which accused and his attorneys had no knowledge prior to verdict, entitles accused to new trial.

2. Criminal Law.—New trial for misconduct of juror was properly denied, where no showing was made that accused and his counsel did not learn of it until after verdict.

3. Homicide.—Whether accused killed in self-defense or willfully in aggressive assault on deceased held question for jury, and conviction not flagrantly against evidence.

4. Homicide—Guilt of Murder Requires "Malice Aforethought" or Predetermination to Kill Without Lawful Reason, but at What Previous Time Determination was Formed is Immaterial.—Before one can be guilty of murder, he must be actuated by "malice aforethought" in doing acts resulting in death, which means a predetermination to kill without lawful reason existing previous to kill-

ing, but it is immaterial at what previous time intention was formed if it then existed.

5. Homicide.—Malice aforethought may be shown by proof of threats or inferred from actions and circumstances.

6. Homicide.—Evidence held to authorize finding that accused was actuated by malice aforethought in killing deceased without lawful reason, authorizing conviction for murder.

O. B. BERTRAM and L. C. WINFREY for appellant.

F. E. DAUGHERTY, Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

The jury that tried appellant in the Russell circuit court, under an indictment which charged him with murder, found him guilty and fixed his punishment at confinement in the penitentiary for life. Judgment was entered against him in accordance with the verdict and he prosecutes this appeal therefrom.

He assigns as a ground for reversal of the judgment misconduct upon the part of one of the jurors that tried him. That reason was assigned for setting aside the verdict of the jury in the motion and grounds for a new trial filed herein. When upon the hearing of a motion and grounds for a new trial it is established by proof that a juror has been guilty of misconduct to the prejudice of defendant's substantial rights and that appellant and his attorneys did not have knowledge of it prior to the rendition of the verdict, it is proper for the trial court to set aside the verdict for that reason and refusal to do so is error for which this court will reverse the judgment. The facts in this instance do not measure up to that rule. To establish misconduct on the part of one of the jury that tried him there was filed with the motion and grounds for a new trial the affidavit of Sidney Lee Roy, who stated that Luther Gosser, one of the jury, on different occasions before the term of court at which he was tried, had stated in the presence of affiant that if he should sit on the jury that tried Pierce he would give him either the death penalty or life imprisonment. So far as the record discloses no other evidence was heard on the question. It does not appear from the affidavit filed when affiant informed defendant or his attorneys of the facts contained therein. Neither appellant nor his attorneys made or filed herein affidavits stating that they did not obtain knowledge of the

facts sworn to by the affiant during the trial and before the verdict was returned. That state of facts exactly was presented to this court in Black v. Commonwealth, 154 Ky. 144, 156 S. W. 1043, and it was there held that because the evidence on the question did not establish that appellant and his attorneys did not have knowledge of the alleged misconduct of the juror prior to the rendition of the verdict appellant had not made a case sufficient to authorize the trial court to set the verdict aside or this court to reverse the judgment entered thereon. See also Barnes v. Commonwealth, 179 Ky. 725, 201 S. W. 318; and Miller v. Commonwealth, 203 Ky. 437. The question was fully discussed in those opinions and reiteration of the reason assigned is deemed to be unnecessary.

It is insisted for appellant that the verdict is not sustained by the evidence, the argument being twofold, as will appear. The first position taken is that the evidence herein so overwhelmingly establishes that appellant killed his victim in self-defense that the verdict and judgment is not sustained by the evidence.

The facts are these: Appellant appears to be an unmarried man and to have lived in a house on land owned by Leonard Mann. Vada Guffey, the man whom he killed, and his wife, were living in the house with him pursuant to some contract or arrangement between them whereby they were farming together. The homicide occurred at night and after all the inmates of the home had retired. Deceased and his wife and their three small children, a neighbor woman, who appears to have been there temporarily quilting for Mrs. Guffey, and her two small children, and appellant, were in the home that night. None of the children testified herein, and we assume that they were too young to do so. No evidence of any previous difficulty between the parties appears in the record, though some circumstances are testified to tending to establish that appellant was guilty of improper relations with deceased's wife. Neva Bernard, the neighbor woman who was present, testified that at or about supper time both Mrs. Guffey and appellant told her that Mr. Guffey was mad. Shortly after supper the inmates of the house retired, deceased being the first to do so. He and his two oldest children occupied a bed in the "back room," as it is described in the evidence. Mrs. Guffey and her youngest child and Mrs. Bernard and her two children occupied one of two beds in the "other

room." After they retired appellant also retired, and he occupied the other bed in the same room with the two women and the children. Before any of them had gone to sleep Mr. Guffey arose and passed through the room in which his wife and Mrs. Bernard and their children and appellant had retired and went to the front porch. It is testified that upon returning to that room he slammed the door and remarked: "I want a handful of God damn salt," and went into the kitchen. He returned in a few moments and slammed the kitchen door very hard as he came back, whereupon appellant said to him: "I will be God damn if you don't bust that door down and we will have to pay for it," to which deceased replied: "I don't care; I don't give a God damn no way," whereupon, as appellant testified: "I turned and got up toward the fireplace. When I got up he grabbed his shovel and came up nearly to my bed and I seen there was something wrong and got the lamp down and lit it and about the time I got the lamp lit he busted the lamp all to pieces and struck me in the head with the shovel. Q. Is there any place? A. Yes, sir, scar up there about two inches long or over. Q. What effect did that have on you? A. It hurt me mighty bad and the next thing I was stabbed in the arm with a knife, and I believed he aimed to kill me and I grabbed the poker and knocked him back in the corner and I called for the other lamp to be lit and his wife got up and lit the lamp." He testified further that he struck deceased only the one blow and that it was struck by him under the circumstances detailed above and in order to defend himself from impending death or great bodily harm at the hands of deceased. The evidence establishes that appellant received a severe wound on the head which may well have been inflicted with the shovel, as he testified, and he also appears to have had a knife wound in one of his arms. Deceased's surviving widow testified for appellant herein, and her testimony in a measure corroborates him. It is insisted for appellant that all of the other testimony in the record so far corroborates his version of how and why he killed deceased that the verdict of guilty can not be sustained by the evidence.

The difficulty we find in sustaining appellant's contention grows out of our inability to conclude that all of the other testimony corroborates his version of the tragedy. The neighbor woman, Neva Bernard, who was present, testified for the Commonwealth that, after de-

ceased returned from the kitchen and slammed the door and appellant had said what he did about that and deceased had responded, as stated, appellant immediately got up and lit the lamp and advanced to about the center of the room and then had in his hands what looked to her to be "a piece of plank," but which might have been the poker. That she then turned her face to the wall to keep from seeing what happened but heard deceased cry out that appellant had broken his rib and leg, and she testified that after the lamp which appellant had lighted was broken the parties fought for some time in the dark, and that she heard a number of licks struck. She finally became so frightened that she ran from the house, announcing her intention to leave. Appellant came to the door and assured her that the fight was over and asked her to remain with Mrs. Guffey while he went for help. When she returned to the room she found deceased lying in one corner, "bloody all over," as she expressed it, and moaning and groaning. Neither appellant nor deceased's wife did or offered to do anything to assist deceased. Upon appellant expressing a desire for some coffee, at the instance of Mrs. Guffey she prepared it for him. Appellant then went and notified Silas and John Pierce, who came back with him to deceased's home. When they reached the scene of the tragedy nothing had been done for deceased and they found him lying in the floor where he had fallen upon receiving the mortal blow. Someone suggested that he should be put on one of the beds, but Mrs. Guffey objected upon the grounds that he was too bloody. A quilt was provided and he was placed on it. One of the neighbors who came in washed the blood from his face and did what he could to make him comfortable. A doctor who was summoned the next day testified that deceased's skull was crushed by the blow which struck him on the side of the head. The doctor testified that he made no further examination than that as he became convinced upon his examination of that wound that it necessarily would prove fatal. The neighbors who prepared deceased's body for burial testified that he not only had the wound on the head but also that deceased's jaw was broken and that his body was covered with bruises. These facts, the testimony of Mrs. Bernard tending to establish that appellant was the aggressor and precipitated the fight by advancing on deceased with the piece of plank or poker, followed immediately by the fight which resulted

in his death, together with the fact that deceased's body showed evidences of his having received many more wounds or blows at the hands of appellant than the one which he testified he struck, as this court views the matter, clearly were sufficient to make it a question for the jury whether appellant killed deceased in self-defense, as he testified, or killed him willfully in the encounter which followed his aggressive assault upon deceased. It can not be said that any verdict other than acquittal upon the ground of self-defense is flagrantly against the evidence.

Again appellant insists that the verdict is not sustained by the evidence for the reason that the record discloses no evidence of malice aforethought and for that reason no verdict of guilty save one finding him guilty of manslaughter from having killed deceased in sudden heat and passion can be sustained. As was said by this court in Cloninger v. Commonwealth, 191 Ky. 841:

> "Before one can be guilty of murder, he must be actuated by malice aforethought in doing the acts which result in the death of another. This means that a predetermination to kill, and that without lawful reason, must exist previous to the act of killing, but it is immaterial at what time previously the predetermination was formed, if it existed at the time of the killing. The existence of malice aforethought may be shown, by proof of threats, or may be inferred from actions of the accused, from the circumstances of the crime, and the manner of its commission."

We have no difficulty in concluding from the circumstances of the crime and the manner of its commission, as disclosed by the record herein, that the jury was authorized in inferring that appellant in killing Vada Guffey was actuated by malice aforethought or predetermination to kill without lawful reason. While the circumstances testified to which occurred before the homicide, if standing alone, would tend but slightly if at all to establish improper relations between appellant and deceased's wife, such circumstances viewed in the light of what occurred thereafter very strongly tend to establish that they were unduly intimate. After appellant mortally wounded her husband neither of them offered to assist him in any way or show any concern

for him, or appeared to be moved by his suffering. She did administer to her husband's slayer. The evidence as to their speaking of his being mad at supper seems to point to the motive. Deceased's action· in coming into· the room where appellant and his wife were sleeping may reasonably be attributed to a well founded suspicion upon his part that all was not well under the arrangement whereby he was to sleep in one room and appellant and his wife in another. According to appellant's own testimony deceased neither had said nor done anything before he arose from the bed to cause him to have to do· so to protect himself. The necessity of defending himself, as he testified, arose after he got up and lighted the lamp. A reasonable inference from all these facts is that appellant, enamoured with deceased's wife, deliberately concluded that he would put an end to her husband's interference, and arose, armed himself with the poker and assaulted him to kill him, as Mrs. Bernard's testimony tended to establish. The circumstances of this crime, that motive for and the manner of its commission, certainly furnish ample evidence of malice aforethought to sustain the verdict finding appellant guilty of murder.

No error to the prejudice of appellant's substantial rights appearing, the judgment must be affirmed.

Judgment affirmed.