# Vanover v. Commonwealth.

(Decided Nov. 15, 1932.)

FORESTER & SMITH for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The grand jury of Harlan county returned a joint indictment against Lee Vanover and Chester Shell charging them with the murder of Mart Pace. The former is here on appeal from a judgment pursuant to a verdict finding him guilty and fixing his punishment at imprisonment for life.

The only ground argued for reversal in appellant's original brief is the alleged error in giving an instruction on aiding and abetting. It is asserted by counsel that the evidence was not sufficient to warrant the giving of an instruction on that theory of the case, and that, inasmuch as the evidence clearly establishes that Shell fired the fatal shots, appellant must have been found guilty under that instruction.

The only witness introduced by the commonwealth who claims to have witnessed the killing was Henry Gross. His evidence is to the effect that Pace was walking along a path near Ward's crossing on Black Mountain when Chester Shell stepped from behind a chestnut and some undergrowth and shot him in the back of the head. Pace pitched forward, falling to the ground, and immediately afterward Shell fired another shot. He then turned and started toward Fourmile, but, upon leaving the scene, was joined by another man who came down from behind a cliff about 20 or 25 steps from where Pace had fallen. The witness, while not positive in his identification of this second man, gave as his

opinion that it was appellant. This opinion was based on the witness' acquaintance with the walk, movements, and general appearance of Vanover. Gross also left the scene at once and reported what he had witnessed.

Other parties who went to the scene of the killing testified that they found Pace lying in the path with a gunshot wound in the back of his head and another under the left arm. Witnesses who first arrived stated that the body of deceased was still warm, and blood was issuing from his wounds. Some of the witnesses testified to having followed tracks leading from the scene of the tragedy for some distance toward Fourmile. It is in evidence that the ground was damp from rain, and that part of the surrounding lands were inclined to be boggy. Lee and Rex Johnson testified that they were hunting on Whiters ridge in the Fourmile community à half mile or more from where Pace's body was found; that they heard two shots in that direction, and a short time thereafter saw Lee Vanover coming from that direction walking rapidly along a path through a thicket; that, when he discovered them, he turned aside and started as though he would run, then walked rapidly on. Further on, in the direction Vanover was going at that time, he was seen and recognized by two or three other witnesses. One witness testified that he was running, had several burrs on his clothing, and was wet and muddy. Gross testified that the man who he thought to be Vanover was, to the best of his recollection, wearing blue pants and light-colored cap and coat. Practically all other witnesses who testified to having seen appellant coming from the direction of the killing stated that he was wearing a light cap and overalls or blue pants, but there is some conflict as to the color of his coat. It is further in evidence for the commonwealth that Pace had taken part in a raid upon some stills, that in May, prior to the killing, he had been a witness against appellant and Shell, and that he was to be a witness against them in a trial to be held at London the following November on a charge of violating the prohibition laws.

There is evidence that Pace, appellant, and his codefendant attended a social gathering at the home of one Mr. Coldiron on the 4th of July immediately prior to the killing. A number of witnesses who were present testified that on that occasion appellant and Shell

were sitting on a bed while others were dancing, and their talk and manner toward Pace were threatening. Some of the witnesses testified that they saw Shell with a pistol. There is also evidence that on the following day, at a gathering at a schoolhouse, appellant and Shell assumed threatening attitudes toward deceased.

Appellant attempted to establish an alibi, and gave a detailed statement of his movements on the day of the killing. He stated that he spent the night before the killing at the home of Bradley Howard, leaving there the next morning about 8:30 and going directly to Loyal, where he remained until about 10:30. He then went to the home of his uncle, John Scott, in Nolansburg, and remained there until he was arrested about 10 o'clock the following night. The murder occurred about noon on October 31, 1931. According to his evidence, in which he finds strong corroboration by a number of witnesses, he was neither at or near the scene of the killing at any time during that day.

Counsel for appellant argue that, even conceding he was present when the crime was committed, there was no evidence to show that he in any way participated in its commission, and therefore he cannot be convicted as an aider and abettor, and in support of that contention they cite Hudson v. Commonwealth, supra; Watkins v. Commonwealth, 227 Ky. 100, 12 S. W. (2d) 329; Crawford v. Commonwealth, 242 Ky. 80, 45 S. W. (2d) 824, 825. The last case cited deals with the question of the sufficiency of evidence to establish a conspiracy, and has no direct application here. The other cases, following the general trend of authority, hold that presence alone without acts of aid or encouragement is not sufficient to constitute aiding and abetting. There are also cases holding that mere negative acquiescence or mental approval is not sufficient, but it has been pointed out that there is a plain distinction between consenting to a crime and advising, encouraging, or assisting another in its commission. After all, it is a question of fact to be determined by the jury from all the proven facts and circumstances of the case.

Evidence for the commonwealth indicates that appellant was present, in a place of hiding, and in a convenient position to keep a lookout and guard against detection or surprise, or to go to the assistance of the principal actor in the crime. Apparently he witnessed

the crime without protest or disapproval, and immediately after the fatal shots were fired joined his codefendant and hurriedly left the scene. On previous occasions the attitude of appellant and Shell toward deceased had been so threatening as to indicate ill feeling and a purpose to do him harm. They were charged with violation of the liquor laws, and deceased had been a witness against them in May, 1931, and was to be a witness against them the following November. This evidence was competent, and authorized the court to give the instruction of which complaint is made.

Since the first consideration of this appeal, it has been made to appear that theretofore counsel for appellant had forwarded a supplemental brief to be filed in the record which in some way either became lost or misplaced. A copy which is now in the record discloses that counsel for appellant, as a further ground for reversal, argue that the court committed prejudicial error in permitting the commonwealth to introduce over objection of appellant, evidence that Vanover's reputation for peace and quietude was bad when his reputation in that respect had not been put in issue. Josiah Burkhart was called in rebuttal by the commonwealth, and was permitted to testify over the objection and exception of appellant's counsel that appellant's reputation for peace and quietude was bad and also as to whether he was a violent and dangerous man. Other witnesses were permitted to give the same character of testimony. Appellant did not introduce any evidence with respect to his reputation for peace and quietude.

Chester Shell, appellant's codefendant, on separate trial was also convicted, and on appeal one of the grounds relied on for reversal was the admission of this same character of evidence over his objection, and this court held that the admission of the evidence in such circumstances was prejudicial error. See Shell v. Commonwealth, 245 Ky. 223, 53 S. W. (2d) 524, decided October 11, 1932. On the authority of that case and the cases therein cited, we are constrained to hold that the court committed prejudicial error in the admission of this evidence.

For the reasons indicated the judgment is reversed, and the cause remanded for a new trial consistent with this opinion.