**HAWKINS et al. v. RUDCO OIL & GAS CO. et al.**

**No. 6151.**

Court of Civil Appeals of Texas. Texarkana.

March 27, 1945.

Rehearing Denied April 5, 1945.

J. V. Fleming, of Dallas, W. H. Barnes, of Terrell, and Suiter & Suiter, of Winnsboro, for appellants.

Jones & Jones, of Mineola, W. H. Sanford, Conan Cantwell, Turner, Rodgers & Winn, and George S. Terry, all of Dallas, Weeks, Hankerson & Surles, of Tyler, Fos-

ter T. Bean, of Kilgore, and Cecil Storey and Charles Yonge, both of Longview, for appellees.

HALL, Chief Justice.

This cause concerns the title to Lot 11 in Block 21 of the town of Hawkins, Wood County, Texas, upon which is located a producing oil well. Appellants, plaintiffs in the trial court, sought to establish title to the lot under the five and ten years' statutes of limitation (R.S. Articles 5509 and 5510) and upon the theory of presumptive grant from A. A. Blackburn and wife, Jane Blackburn, appellees' predecessors in title, to Dr. B. F. Humphreys, deceased, father of appellants. These issues were joined in the trial court by proper pleadings of appellees in a trial before a jury. The jury verdict was favorable to appellees and judgment was entered for them.

Appellants' first point asserts that the trial court committed error in overruling their motion for an instructed verdict and entering judgment against them. It is appellees' contention under this point: (1) That "the facts adduced upon the trial were conclusive, as a matter of law, of a presumption that in some manner B. F. Humphreys, plaintiffs' (appellants') father, had acquired the title of A. A. and Jane Blackburn, and the court should have so found"; (2) "the facts were undisputed, as a matter of law, of the adverse possession of B. F. Humphreys, begun during the lifetime of A. A. Blackburn in 1873, and with his acquiescence and knowledge, and continued until January 7, 1884, with the acquiescence and knowledge of Jane Blackburn, and the proof showed, under all the elements of the statute of limitation, that plaintiffs held title to the land, precluding all other claims"; (3) "the evidence was undisputed that A. A. Blackburn and Jane Blackburn and their children had knowledge of the possession, recognized and acquiesced in the same, and never paid any taxes upon the land until about ten years after Dr. Humphreys died, and such recognition of his title and the prior possession of the said Dr. Humphreys to the descent cast upon the heirs of Jane and Albert Blackburn, conclusively shows that, under such prior possession of Dr. Humphreys, he had the title of the ancestors of said children, the quitclaim grantees of the defendants."

This court is bound by the jury verdict if there be sufficient evidence to support it. Houston Natural Gas Co. v. Kluck, 139 Tex. 491, 163 S.W.2d 618; Kent v. National Supply Co. of Tex., Tex.Civ. App., 36 S.W.2d 811, w/r. And in determining the sufficiency of the evidence to support the jury verdict it must be viewed most favorably toward the appellees in so considering motions of appellants for peremptory instruction before, and for judgment notwithstanding, after the jury's verdict. National Life & Accident Ins. Co. v. Ringo, Tex.Civ.App., 137 S.W.2d 828, w/r; Davis v. Wolverton, Tex.Civ.App., 184 S. W.2d 659.

In May, 1873, A. A. Blackburn and his wife gave ninety acres of land to the Texas & Pacific Railway Company for a townsite. The Texas & Pacific Railway Company at the time was engaged in extending its railway line from the east toward Mineola. A short time after the above gift was executed, the Railway Company made and filed for record a plat for the present town of Hawkins, locating it upon the land theretofore donated by Blackburn and wife and dividing said townsite into blocks and lots. On July 9, 1873, the Railway Company conveyed back to Blackburn and wife several lots in Block 21 of the Hawkins townsite, among which was Lot 11.

The facts are that A. A. Blackburn some time during 1872 assisted in moving Dr. B. F. Humphreys to the Hawkins community, settling him and his family on the Beavers farm a short time before the Texas & Pacific Railway entered and laid out the town of Hawkins. The Texas & Pacific Railway entered the town of Hawkins in 1873, and shortly thereafter a small building was erected by D. C. Howard, a son-in-law of A. A. and Jane Blackburn, upon Lot 11 here involved. Dr. Humphreys later occupied this building as an office and drug store. The date of his entry is in dispute. One witness fixes the date in 1872, before the railway entered, and before Blackburn had conveyed the townsite to the Railway Company, and, evidently, before the town had been platted into blocks and lots. Other witnesses fix the date of the beginning of Dr. Humphreys' occupancy of Lot 11 about 1873, and one as late as 1878. A. A. Blackburn died in 1875; Jane, his wife, died in 1898; and Dr. B. F. Humphreys died in 1897. By a news item in the Dallas Daily Herald of January 7, 1884, introduced in evidence by both parties, it is shown that the Dr. Humphreys' drug store located upon Lot 11 was destroyed by fire, the loss being total—"nothing saved." After this occurrence the testimony is high-

ly controversial as to whether Dr. Humphreys ever thereafter occupied Lot 11 for any purpose. There is testimony in the record to the effect that during the time Dr. Humphreys used the store building as a drug store situated on part of said lot, the public used the other portion of it as a passageway for wagons and teams. Although the record reflects that Dr. Humphrey rendered and paid taxes on Lot 11 from about 1878 to 1897, the date of his death, the appellants, his heirs, neither thereafter paid any taxes thereon, nor used the property in any manner whatever; but, on the contrary, apparently abandoned the same for a period of more than forty years. Some of the witnesses testified that the drug store was reputed to belong to Dr. Humphreys, but made no reference to his ownership of the lot. One witness testified that the first time he learned of Dr. Humphreys' running a drug store at Hawkins was "since this oil well business came up down here; you see, before that time we never did discuss no blocks or nothing like that." This witness testified further with respect to Dr. Humphreys' reputed claim:

"Q. You ever hear anything about it prior to the time of the oil? A. It was never discussed, we didn't even know there was town lots there."

Ed Blackburn, son of A. A. and Jane Blackburn and grantor of appellees, testified that Dr. Humphreys bought the store building on Lot 11 from Clem Howard, witness' brother-in-law, and moved into same about two years after A. A. Blackburn's death. This witness testified positively that Dr. Humphreys did not buy the lot but only the building located on it. The witness Blackburn also testified that he knew of no history, reputation, or knowledge in his family that Dr. Humphreys claimed to own Lot 11. Continuing, this witness testified:

"Q. Did anyone at any time prior to the time this suit was filed last year ever say to you or did you ever hear anyone else say in your presence that Dr. Humphreys owned Lot 11 in Block 21? A. Never heard it discussed at all only at the house.

"Q. Well, did you ever hear anybody at the house or any place else say that Dr. Humphreys owned it? A. No, sir; no, sir.

"Q. Did you ever hear, prior to the time of this suit ever hear anybody state or claim or did you ever have any information from any source that Dr. Humphreys had a deed from anybody to Lot 11 in Block 21? A. No, sir.

"Q. Now tell me this: Was Dr. Humphreys and your family on good terms during the time you lived there? A. Yes, sir.

"Q. After your father's death were your mother and Dr. Humphreys friendly? A. Oh, yes. He waited on us there. He was our family physician for two or three years, I guess, until the young doctors came in there. My mother and Mrs. Humphreys, I don't reckon there ever was any two closer friends than they were.

"Q. Your mother was friendly with Dr. Humphreys, wasn't she? A. Oh, yes.

"Q. If Dr. Humphreys had any deed from your mother or father or both of them to this Lot 11 in Block 21 and lost it, there wouldn't have been any difficulty about him getting another one, would there? A. Not a bit. If she knew it she would have given him one without any trouble.

"Q. If she had made one she would have given him another one? A. Yes, sir.

"Q. There was no enmity between them? A. No, sir; not a bit."

It is undisputed that there is no deed of record from A. A. Blackburn and wife to Dr. B. F. Humphreys conveying Lot 11, Block 21.

In response to facts and circumstances, as above outlined, the trial court submitted to the jury the following special issues:

"Question No. 1: Do you find from a preponderance of the evidence that a deed from A. A. Blackburn to B. F. Humphreys to Lot 11 in Block 21, being the land in controversy, was executed and delivered during the life time of A. A. Blackburn? Answer 'Yes' or 'No'. Answer: 'No.'

"Question No. 2: Do you find from a preponderance of the evidence that B. F. Humphreys had and held peaceable and adverse possession, as those terms are defined, of the lot involved, being Lot 11 in Block 21 of the town of Hawkins, for a period of time beginning during the life of A. A. Blackburn and continuing for as much as eleven years or more? Answer 'Yes' or 'No'. Answer: 'No.'

"Question No. 3: Do you find from a preponderance of the evidence that B. F. Humphreys had and held peaceable and adverse possession of the lot involved for any period of time beginning after the death

of A. A. Blackburn? Answer 'Yes' or 'No.' Answer: 'Yes.'

"Question No. 4: Find and answer from a preponderance of the evidence for what time did such peaceable and adverse possession, if any, you have found in answer to question No. 3, begin and to what time did it continuously extend, if any. Answer stating the time of beginning and the time of ending, giving the years?' Answer: '1878 to 1884'."

The burden of proof rested with appellants to establish the affirmative of the issues by a preponderance of the evidence. And with respect to Issue No. 1, it was necessary to establish its affirmative by clear and convincing evidence. Hutchison v. Massie, Tex.Civ.App., 226 S.W. 695, w/d; Silverman v. Ponce, Tex.Civ.App., 268 S.W. 497. The record is large, containing about 1800 pages of testimony, and many contradictions and discrepancies appear with respect to the period and character of occupancy by Dr. Humphreys and the date of his entry upon the lot. This is, of course, but natural. Most of the witnesses testifying were aged people, and many of the facts sought to be established by them occurred nearly three-quarters of a century before the trial. It became necessary for these old people to turn back the pages of life to the days of their youth and to recite the incidents occurring at the time of the beginning of the little East Texas town of Hawkins. It was also necessary for them to piece together the broken threads of memory of by-gone days and give to the jury, as best they could, the facts relating to the subject matter of this suit. The weight to be given their testimony was for the jury to determine. Graham v. Hollandsworth Drilling Co., Tex. Civ.App., 169 S.W.2d 1001, w.o.m. After careful examination of the entire record, we have reached the conclusion that there was sufficient evidence to raise the issues submitted.

Appellants' fourth proposition under Point 1 is: "The plaintiffs (appellants) through their father's (Dr. B. F. Humphreys') possession, as a matter of law, held the title to said land under the 5-year statute of limitation." There is no merit in this contention. Under the record here in order for appellants to have prevailed in the trial court perforce the 5-year statute of limitation, it was incumbent upon them to establish the fact, among others, that they were holding said lot under a deed either to them or their father, Dr. Humphreys, duly registered for the five-year period. There was no such deed shown and certainly none was ever filed for record. Thomson v. Weisman, 98 Tex. 170, 82 S.W. 503, and cases there cited; Settegast v. Floyd, Tex.Civ.App., 214 S. W. 686. Appellants' Point 1, and propositions 1, 2, 3, and 4 thereunder, are overruled.

Appellants' second point is: "The court erred in its submission in plaintiffs' rights under the ten year statute of limitation. It was alleged that such adverse possession began January 1, 1873, and continued each day thereafter until 1896, and the court erred in submitting plaintiffs' rights under the ten year statute of limitation in Question No. 2 and No. 3, cutting the claim of title into two periods of peaceable, adverse and continuous possession, one beginning before and the other after the death of A. A. Blackburn, and in giving to the jury for their guidance in determining such adverse possession the following explanatory law: 'And possession is not "continuous" if it is, within the period of time asked about, broken by a period of vacancy and lack of occupation and use by the one claiming peacable possession, unless the attending circumstances were such as to show the claimant did not intend to abandon possession, and unless such period or periods of vacancy and lack of occupation and use, if any, were less than one year at any one time during the period asked about and were reasonable and consistent with a continued intention during such time not to abandon possession. If the attending facts and circumstances were such, in case of temporary vacancy and lack of occupation and use, if any, by claimant for less than a year at any one time, as to show a lack of intention to abandon possession, and were reasonable, then the possession would be regarded as "continuous." ' "

In the charge preceding the special issues the trial court, among others, gave the following "explanatory instruction": " 'Peaceable Possession', as used, means such possession as is continuous and not interrupted by any adverse suit to recover the land; and possession is not 'continuous' if it is, within the period of time asked about, broken by a period of vacancy and lack of occupation and use by the one claiming peaceable possession, unless the attending circumstances were such as to show the claimant did not intend to abandon possession, unless such period or periods

234

of vacancy and lack of occupation and use, if any, were less than one year at any one time during the period asked about and were reasonable and consistent with a continued intention during such time not to abandon possession. If the attending facts and circumstances were such, in case of temporary vacancy and lack of occupation and use, by claimant for less than a year at any one time, as to show a lack of intention to abandon possession, and were reasonable, then the possession would be regarded as 'continuous'."

To this explanatory instruction appellants leveled the following objection: "To which charge, before same was read to the jury, the plaintiffs objected to that portion thereof submitting any question of abandonment because same was a charge upon the weight of the evidence, and further same is evidentiary only to be considered by the jury in passing upon any ten years of continuous possession from 1873 until the ouster alleged in plaintiffs' second amended original petition, and said charge would lead the jury to believe there was a break in possession, as a matter of law."

█ It is a requirement of Rule 277, Texas Rules of Civil Procedure, that in submitting a cause to the jury upon special issues, the trial court "shall submit such explanatory instructions and such definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues, and in such instances the charge shall not be subject to the objection that it is a general charge." Article 2189, R.C.S., which rule 277 repealed, states that "the court shall submit such explanations and definitions of legal terms * * *." It was said in Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, 484: "Clearly the rule affords a greater latitude to the trial judge than did the statute, and instructions are now permissible which formerly would have been condemned." In our opinion the explanatory instruction set out above is not on the weight of the evidence but was necessary and fully authorized by the provisions of Rule 277, and was required under the evidence in connection with the issues involving the ten years' statute of limitation. Even under the former statute (Article 2189) a similar instruction was approved in a case involving an issue of ten years' limitation. Halsey v. Humble Oil & Refining Co., Tex.Civ.App., 66 S.W.2d 1082, w/d.

█ Under this point appellants also complain of the action of the trial court in submitting two issues, the second and fourth, concerning the ten years' limitation period claimed by them. That is, dividing the period of their adverse claim to the land into two periods, one beginning before A. A. Blackburn's death and the other beginning at a time after his death. There is no merit in this contention for the reason that no exception was taken by appellants to the giving of said issues, either as to their substance or form. Hence, their irregularity, if any, is waived. Rule 372, Sec. (d), Texas Rules of Civil Procedure.

We have carefully examined all the points of error advanced by appellants and have concluded that they are without merit, and they are overruled.

The judgment is affirmed.