**DAVIDSON et al. v. WHITAKER et al.**

No. 6220.

Court of Civil Appeals of Texas. Texarkana.

July 11, 1946.

Rehearing Denied July 25, 1946.

W. E. Jones and J. W. Falvey, Jr., both of Longview, for appellants.

Fred Whitaker, of Carthage, H. A. Berry, of Houston, Foster T. Bean, of Kilgore, and Wardlow Lane, of Center, for appellees.

HALL, Chief Justice.

This is a trespass to try title action brought by appellants as heirs of W. R. Davidson and wife, Willie Davidson, both deceased, against appellees who claim the mineral and surface interest to a 60-acre tract of land located in Panola County, Texas. Appellants assert title to said land both by deed and under the five, ten and twenty-five year statutes of limitation, Rev.Statutes of Texas, Arts. 5509, 5510 and 5519, Vernon's Ann.Civ.St. arts. 5509, 5510, 5519. They also seek to remove cloud from title cast by certain deeds to the surface and minerals under which appellees hold and pray for a receiver. Appellants answered by general denial, plea of not guilty, and set up the five, ten and twenty-five year statutes of limitation. The case was tried to a jury upon fifteen special issues, all of which were answered favorably to appellees. The judgment followed the verdict.

Appellants' Point Two is: "The jury was in error in its answers of 'No' to the first two issues since all of the evidence showed that the plaintiffs (appellants) had acquired title to the 60 acres in controversy by both the ten year and the twenty-five year statutes of limitation and the court should have disregarded said answers and rendered judgment for plaintiffs."

The first two issues submitted to the jury by the trial court relate to appellants' claim to the 60 acres of land under the ten and twenty-five year statutes of limitation, and, as stated, were answered unfavorably to them. The 60 acre tract of land in controversy, adjoins a 71 acre tract of appellants on the North. W. R. Davidson, appellants' father, who died in 1931, purchased this 71 acre tract in 1911 from W. M. Bowen and it is undisputed that appellants have the record title to this tract. Upon this 71 acre tract W. R. Davidson's residence was located and he lived there until he died. In 1907 G. A. Lampin, appellees' predecessor in title, purchased the 60 acres in controversy and the record title to this tract is now in appellees. So the questions at issue here are: (1) The boundary line between the respective tracts, and (2) the use by the respective parties of the 60 acre tract from 1911 until the filing of this lawsuit. There is no evidence that any of the parties ever lived on the 60 acres. W. M. Bowen, who sold the 71 acre tract to W. R. Davidson in 1911 testified that he purchased the 71 acres in 1906, built a house and moved on the land in 1907; that his North line was near Dillard's Creek; that G. A. Lampin was cultivating the south part of the 60 acres known as the Israel field, and had a rail fence to the south of it. This witness testified that while he owned the 71 acre tract he claimed no land beyond the old rail fence which separated his tract of land from the Israel field, a part of the 60 acres. The witness Jim Lampin, nephew of G. A. Lampin, the owner of the 60 acres, testified that he lived and worked with his uncle G. A. Lampin from 1912 to 1927; that about 1918 he heard a trade between G. A. Lampin, owner of the 60 acres, and W. R. Davidson, owner of the 71 acres, in which G. A. Lampin agreed and consented for W. R. Davidson to work the part of the 60 acres known as the Israel field, adjoining Davidson's 71 acres. This witness further testified that Davidson agreed to pay Lampin rent and that he did pay Lampin a load of corn as rent. This witness also testified that from 1912 to 1918 he and his uncle, G. A. Lampin, cultivated the land which was rented to Davidson in 1918. Similar testimony was given by Eddie Lampin, a son of G. A. Lampin. The record shows further, and the jury so found, that in 1928 G. A. Lampin sold the timber on the 60 acre tract to Z. C. Daniels and that Daniels entered upon the land soon thereafter and cut the timber. There is also testimony from appellees' witnesses, and the jury so found, that the 60 acres was not used or cultivated by anyone during the years 1934 and 1935. There is nothing in this record showing that W. R. Davidson ever repudiated his tenancy with G. A. Lampin. Thus it is clear from this record, when credence is given to appellees' evidence, which, in our opinion is substantial in nature, that there was no ten consecutive years of adverse use of the 60 acres by appellants or their father. Under such circumstances we would not be warranted in disturbing the jury's verdict. Collins v. Davenport, Tex.Civ.App., 192 S.W.2d 291, and authorities there cited. The credibility of the witnesses and the weight to be given to their testimony was for the jury to determine. Graham v. Hollandsworth Drilling Co., Tex.Civ.App., 169 S.W.2d 1001; Hawkins v. Rudco Oil and Gas Co., Tex.Civ.App., 187 S.W.2d 230, both by this court. Based upon this same testimony the jury found that appellees had title to the 60 acres under both the ten and twenty-five year statutes of limitation.

Appellants contend that the jury "erred in answering 'No' to issues three and four, since plaintiffs' (appellants') deed expressly recites its location and the answer had to be 'Yes' to one or the other of these questions."

The evidence in this case on the whole indicated three possible dividing lines between the 71 acre tract of appellants on the South and the 60 acres in controversy on the North. Appellants' testimony fixed two lines, either of which could be the boundary line between the two tracts of land. One of these lines follows the call for course and distance in the deed while the other follows their line of asserted occupancy. Appellees' testimony fixes an old rail fence, later replaced by wire, which runs along Dillard's Creek, as the boundary line between the two tracts. Special Issues Three, Four, and Five in-

quired of the jury which of these lines was the extreme North boundary line of the 71 acre tract. The jury found in answer to Issues Three and Four that neither of the lines claimed by appellants was the extreme North boundary line of their 71 acre tract, and in answer to Issue Five found that the old fence line along Dillard's Creek was the extreme North boundary line of appellants' land. W. M. Bowen who conveyed the 71 acre tract to Davidson, testified that when he purchased this land G. A. Lampin was cultivating the Israel field, a part of the 60 acres beyond Dillard's Creek and the old rail fence, and continued to cultivate it until he (Bowen) sold the 71 acres to W. R. Davidson in 1911. This witness also testified that he did not claim any land North of the old fence. Witness Jim Lampin testified that there was an old rail fence between the two tracts of land which followed generally the course of Dillard's Creek. Eddie Lampin testified that there was an old fence which ran along Dillard's Creek and that W. R. Davidson recognized it as being the line between his 71 and Lampin's 60 acre tracts. Ed Blackman and Elliott Clark also testified that an old fence ran along Dillard's Creek. In our opinion, the above testimony is amply sufficient to support the jury's finding that the old fence constitutes the extreme North boundary line of the 71 acre tract. This point is overruled.

Appellants' Sixth Point is: "The court should have granted a new trial and have set the judgment aside when it was discovered after the trial and judgment that three of the jurors, Jim Anderson, Enoch Salter and Charley Thompson were related, either by blood or marriage, to Fred Whitaker (one of the appellees), and failed and refused to divulge the fact when asked by plaintiffs' attorney."

The question involved in this point was first brought to the attention of the court in appellants' motion for a new trial. The trial court heard testimony with respect to the disqualification of the above named jurors. It developed upon said hearing that after the verdict was rendered the jurors discovered that they were related in some manner or degree to appellee, Fred Whitaker. This fact was unknown to either of them before and during the trial. There is nothing in the testimony given at said hearing which shows the degree of relationship, if any, between the jurors and appellee, Whitaker. In this condition of the record we would not be warranted in disturbing the order of the trial court overruling the motion for a new trial.

In Price v. Humble Oil & Refining Co., Tex.Civ.App., 152 S.W.2d 804, 813, by the Dallas Court of Civil Appeals in passing upon a similar question as here involved, stated: "After an extended hearing, involving largely above objection, the motion was overruled. The court's action in so ruling is justified, (1) because the particular question cannot be first raised after verdict; El Paso Elec. Co. v. Whitenack, Tex.Com.App., 1 S.W.2d 594, citing many cases; (2) the evidence was fully sufficient to support the court's conclusion that counsel for appellants, on voir dire examination, did not ask questions reasonably calculated to elicit the information that such juror was related to any of the defendants within the prohibited degree; Templeton v. State, Tex.Cr.App., 57 S.W. 831; Page v. State, 22 Tex.App. 551, 3 S.W. 745; Perkins v. State, 120 Tex.Cr.R. 399, 46 S.W.2d 672; (3) Juror Hoskins testified that he did not know of his kinship to any of the defendants (being a cousin to three of the Berry heirs) until after the verdict was rendered. Accordingly, 'His judgment could not have been affected even insensibly, by a circumstance of which he had not the slightest knowledge.' Rogers v. State, 109 Tex.Cr.R. 88, 3 S.W.2d 455, 459. See Reed v. Commonwealth, 273 Ky. 607, 117 S.W.2d 589 [116 A.L.R. 673], and Annotations thereof in 116 A.L.R. 679, indicating that the holding in the Rogers case accords with the great weight of authority." This point is overruled.

We have carefully examined all other points brought forward by appellants, they present no error, and are therefore overruled.

The judgment of the trial court is affirmed.