### DAVIS et al. v. WOOLVERTON et al.
#### No. 11658.

Court of Civil Appeals of Texas. Galveston.
Dec. 21, 1944.

Rehearings Denied Jan. 11, 1945.

Williams, Lee, Kennerly & Cameron and Fred L. Williams, all of Houston, for appellant Sam W. Davis.

Grover Sellers, Atty. Gen., and W. V. Geppert and Geo. W. Barcus, Asst. Attys. Gen., for the State.

W. H. Sanford, of Dallas, E. T. McCain, E. V. Swift and V. M. Johnston, all of Palestine, Sewell, Taylor, Morris & McGregor, of Houston, Neal Neece, of Dallas, Wallace Mason, of Mexia, J. L. Toone, of Dallas, Wayman & Kleinecke, of Galveston, Paul A. McDermott, of Fort Worth, and Dwight L. Simmons, Shook & Shook, McEntire & Shank and Ralph B. Shank, all of Dallas, for appellees.

GRAVES, Justice.

This suit arose under the "Vacancy Act of 1939", Vernon's Texas Civil Statutes, article 5421c, section 6. The present appellees, private claimants thereof as titled land, sought against the present appellants, the State of Texas and Sam W. Davis, maker of "Mineral Application 35812" relating thereto, the cancellation of an order —pursuant to such application—of the Commissioner of the General Land Office, dated October 13, 1942, finding to be vacant unsurveyed school land a tract of 921 acres, described as lying between the Edley Ewing Survey, on the east, and the James Madden Survey, on the west, in Anderson County, Texas, upon the averment that no such vacancy in fact existed. They added counts for removal of an alleged cloud upon their title thereto, and in trespass to recover the land.

All the appellees made common cause against the State and its designated grantee, Sam W. Davis, in the prosecution of the objectives indicated.

The trial court, pursuant to Rule 279, Texas Rules of Civil Procedure, over the protests of the appellants, submitted to the jury what it deemed to be all the controlling issues of fact raised by the pleadings and evidence in special issues, which, together with the jury's answers thereto, were these:

"Special Issue No. 1.

"Which line do you find to be the true west line of the Edley Ewing Survey as established on the ground by the surveyor W. S. McDonald, in 1835?

"Answer this issue by stating: 'A line running South 1 degree east from the fence corner now at the most Southern Southwest corner of the John Delap Survey' or 'On and with a line as run by the Surveyor E. S. Atkinson, extending South from the South line of the John Delap Survey and from a point 731 vrs. East from the fence corner now at the most Southern South-West corner of the John Delap Survey.'

"Answer: A line running South 1 degree east from the fence corner now at the most southern south-west corner of the John Delap Survey. * * *

"Special Issue No. Two.

"Which line do you find to be the true east line of the James Madden Survey as established on the ground by the Surveyor W. S. McDonald in 1835?

"Answer this issue by stating: 'A line running and extending South 1 degree East through the fence corner now located at the most Southern South-West corner of the John Delap Survey,' or 'The line run by Surveyor E. S. Atkinson as the East line of the James Madden Survey.'

"Answer: A line running and extending South 1 degree East through the fence corner now located at the most Southern South-West corner of the John Delap Survey. * * *

"Special Issue No. Three.

"Do you find from a preponderance of the evidence that the east line of the James Madden was placed by the original surveyor, McDonald, in part along the west line of the Edley Ewing Survey as placed by the original Surveyor of said Edley Ewing Survey?

"Answer: Yes."

Thereupon, the Court, again over appellants' protests, giving effect to such verdict of the jury as upholding the appellees' contentions as to the location on the ground of the lines of the land in dispute, entered its judgment in favor of the appellees against the appellants upon that verdict alone, decreeing in consequence that no such claimed vacancy existed.

The State and Mr. Davis, in seeking here a reversal of that decree below, in substance contend alone, as they so did below, that the cause should never have gone to the jury in the first instance; nor should such a recovery have been entered for the appellees, in the second, because, under the undisputed evidence, the vacancy they declared upon was shown to have existed as a matter of law, in consequence of which the trial court should have upheld the stated order of the Land Commissioner finding the land to be vacant and unappropriated school land, and should have decreed the title thereto, accordingly, to be in the appellants.

Such being their sole presentment to this court, they raise no other points of error in their briefs, either as to the admissibility of testimony, or in criticism of the court's charge; nor as to the sufficiency of the evidence to support the verdict rendered.

In other words, the elimination by the appellants themselves of all other inquiries · results in the posing to this court—on the review here—of this single question of law: did the evidence raise a question of fact over whether the east line of the Madden and the west line of the Edley Ewing Surveys were located as the appellees contended and the jury found they were? If it did, then admittedly the appellants have no longer any standing in this court, and the challenged judgment for the appellees must be affirmed.

■ These, among other rules governing such a situation, have been so well established as to have become axiomatic:

(1) The appellate court is bound by the jury's verdict, if there is any legal evidence to support it. Wixom v. Bowers, Tex.Civ. App., 152 S.W.2d 896.

■ (2) The evidence must be viewed most favorably toward the appellees in so considering motions of appellants for peremptory instruction before, and for judgment notwithstanding, after the jury's verdict. National Life, etc., Co. v. Ringo, Tex. Civ.App., 137 S.W.2d 828, writ refused.

■ This court has accordingly given its most serious consideration to the controversy as thus narrowed, reviewing the vast

body of evidence presented; as a result, it is constrained to hold that it was a question of fact for the jury as to whether or not the two one-league surveys involved, the James Madden, which was riparian to the Trinity River on that survey's west side, and the Edley Ewing, which lay between latitudinal lines to its east, were in effect adjoiners—that is, that the east line of the Madden and the west line of the Edley Ewing coincided, at least to the extent of eliminating the intervention between them of any such tract as the claimed 920-acre vacancy constituted.

While, as indicated, supra, the evidence took a wide range, the controversy ran mainly around the testimony of the respective surveyors who had surveyed the alleged vacancy area with reference to this controversy—that is, Mr. W. B. Chambers for the appellees, and Mr. E. S. Atkinson for the appellants—both of whom made maps of their work, which were used on the trial for the proponents thereof, and in like manner have been severally attached to the briefs of the parties on this appeal; in addition, both surveyors orally testified fully, so that the jury had the benefit, not only of their interpretations of the record evidence, but also of their findings on the ground itself in so recently surveying the land with the objective indicated.

Both the Edley Ewing and the Madden leagues were surveyed by W. S. McDonald in August of 1835, the former before the 4th day of that month, the latter on the 27th day thereof.

In the light of those facts, this statement, concreting, and, so far as it goes, giving the gist, as well as the ultimate result of the testimony as a whole, which this court adopts as being substantially correct, is taken from the appellees' brief:

"The evidence showed, and the jury found, that the true west boundary line of the Edley Ewing Survey and the true east line of the James Madden Survey were established on the ground by the original surveyor, W. S. McDonald, so as to preclude the existence of any vacancy. The true West boundary line of the Edley Ewing Survey was found by the jury to be at a point such that its Northwest corner is approximately 731 varas West (act. S. 89 degrees 54' W.) of the point where Appellants' surveyor, Atkinson, placed his Northwest corner of the Edley Ewing, and such that its Southwest corner is approximately 659 varas West of the point where Appel-

lants' surveyor, Atkinson, placed his Southwest corner of the Edley Ewing.

"The true East boundary line of the James Madden Survey was found by the jury to be at a point such that its Northeast corner is approximately 564 varas East (act. N. 89 degrees 02' E) of the point where Appellants' surveyor, Atkinson, placed his Northeast corner of the James Madden, and such that its Southeast corner is approximately 527 varas East (act. S. 89 degrees 39' E) of the point where Appellant's surveyor, Atkinson, placed his Southeast corner of the James Madden.

"McDonald's field notes for the west boundary line of the Edley Ewing, beginning at its Northeast corner, call for 'Post in mound from which a blk Jack 2 I.D. brs S 15 E 15⅝₀ vrs. dist., also a Blk Jack 2 I. D. brs. S 14 E 5⅝₀ vrs. dist.

" 'Thence S 320 vrs to Blk Jack station 10 I.D.

" '860 vrs. to Branch C.N.W.

" '1850 to a Blk Jack station

" '4244 vrs. to corner in prairie

" 'Set post in mound.'

"McDonald's field notes for the East boundary line of the James Madden, beginning at its Northeast corner, call for 'post set in mound from which a Blk Jack 10 I. D. bars N. 68 W. 8⅝₀ vrs Dist. also a Blk Jack 14 I.D. bars N. 11 E 10 vrs Dist.

" 'Thence S 126⅘₀ vars to a Blk Jack station 4 I.D. 262⅘₀ vars to a blk Jack Station 10 I.D.

" '6093 vars. to a corner in Prairie set post in mound'.

"Appellee's witnesses testified to objects found on the ground that corresponded to the objects called for by McDonald at the Northwest and Southwest corners of the Edley Ewing, which objects the jury could conclude were those originally placed by Surveyor McDonald in 1835. Appellees' surveyor, Chambers, testified that at the point where he established the Northwest corner of the Edley Ewing he found, in 1935, 'An old rock mound'. When asked if he thought that this mound 'had been there such a long, long while that it could extend back to August, 1835', he replied 'I think it could have been construed as being that old'. 'It was sunken down in the ground and looked like the rocks had been piled together for many years'.

"At the point where he established the Southwest corner of the Edley Ewing he

found (during another survey he had made) in 1926 'an old stake'. Chambers also testified that said old stake 'had the appearance of having been there a long while', and there could be 'no doubt that the old stake located at the Southwest corner of the Edley Ewing, as established by him 'was placed there to mark a land corner'.

"Appellees' witness, W. D. Dyal, who had been a resident of Anderson County since the 28th day of July, 1908, and who for about two years lived on the 1,000-acre Buffington tract carved out of the Southwest portion of the Edley Ewing Survey, testified that he had occasion to go around the boundaries of said 1,000-acre tract in the year 1908, with a surveyor named Merrick, and that at the Southwest corner of said 1,000-acre tract (which was also the Southwest corner of the Edley Ewing Survey, as established by Surveyor Chambers, and as found by the jury) he and Merrick 'found an old stake just barely inside the corner * * *'; that he did not 'remember positively the material that the stake was made of, but it was a very old stake'; that 'it was an old stake and it was weather-worn like it had been there for a long time'.

"Appellees' witnesses also testified to objects found on the ground that corresponded to the objects called for by McDonald at the Northeast and Southeast corners of the James Madden. Appellees' surveyor, Chambers, testified that he found in 1933, and the same is still on the ground, 'an old rock mound' at the point where he establishes the Southeast corner of the James Madden, 'It is an old rock mound and looks to have been there from time immemorial, and it is in line with the marked, occupied line of the Daniel Parker, Jr., west to the river, and that portion of the Adams leading from Points 6 and 7 and intersecting an old marked line leading North from Point 7 to Point 16, to Point 37, and to Point 18, on Chambers' map.''

From the above evidence alone—implemented and buttressed as it was by an array of other relevant facts and circumstances—the jury had the right to believe that the old rock-mounds and the old stakes were the original mounds and stakes placed by McDonald, in accord with the rule thus stated by the Supreme Court:

"Where a stake is once placed, it fixes the corner as conclusively as if marked by natural objects. Owing to the fact that it may be removed or obliterated, its location may be more difficult of proof; but, if proved, it fixes the corner with the same certainty as where it is marked by a permanent object. * * *

"If the place where it was originally located can be established, the call for distance should yield to it." Thatcher v. Matthews, 101 Tex. 122, 105 S.W. 317, 318.

The opinion might properly end here; but it may not be amiss to add that—by and large over the cause as a whole—an analogous situation is deemed to have been presented here on the facts to that determined by this court in the recent vacancy case of State v. Franco-American Securities, Tex.Civ.App., 172 S.W.2d 731, wherein it held that the long-established position of the senior John R. Williams League on the ground determined the dependent positions with reference to it of its junior adjoining surveys that were so tied to it.

Similarly, in this instance, the same surveyor, McDonald, as recited, not only surveyed, in the year 1835, the Edley Ewing and the James Madden Leagues, with which this controversy has so much to do, but he also, during that same year, on September 27th, surveyed the John Adams League. It, like the James Madden, was riparian to and based upon the Trinity River; not only so, but evidence from other sources showed that the north, west and south boundary lines of the Edley Ewing had been relocated and verified as being in their present position, as early as the year 1851, while those of the Madden had likewise been relocated four years before that, in 1847. In other words, in late September, or about sixty days after having so surveyed the Edley Ewing and the James Madden, McDonald so tied the John Adams League to them as to furnish well-nigh indisputable proof now that their lines did lie as the jury herein found; further, that such positions on the ground had been in consonance with the locations of the various adjoining and contiguous surveys, such as the Daniel Parker, Jr., the Elias G. Myers, and others, as to make the jury's findings almost inevitable inferences from such conditions.

Since these conclusions determine the merits of the appeal, it is deemed unnecessary to add further to them. They require an affirmance of the judgment. It will be so ordered.

Affirmed.